UNITED STATES of America

v.

Paul ENTEN et al.

Crim. No. 166–71.

United States District Court,
District of Columbia.

July 1, 1971.

Harold J. Sullivan, William E. Reukauf, Washington, D. C., for the United States.

Thomas A. Wadden, Jr., Washington, D. C., for defendant Paul Enten.

Leslie Scherr, Washington, D. C., for defendant Michael Lemonakis.

## MEMORANDUM OPINION

SIRICA, Chief Judge.

During the trial of the above matter, defendants Enten and Lemonakis have renewed their motion to suppress their monitored, tape-recorded out-of-court statements. Defendants' similar motion at the pre-trial stage was denied by this court on the basis of United States v. White, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971) and Monroe v. United States, 98 U.S.App.D.C. 228, 234 F.2d 49 (1956). Defendants urge upon this court as grounds for their renewed motion the intervening death on June 10, 1971 of James Skouloukas, the informant who participated in the monitored conversations with defendants Enten and Lemonakis, as well as the inaudibility of one particular face-to-face conversation between Skouloukas and Enten. The government has responded by proffering the testimony of the monitoring agents in place of the unavailable witness, Skouloukas, as to what they heard during the conversations, including the face-to-face meeting which resulted in a poor quality tape-recording. The government argues the admissibility of this type of testimony on the strength of White, supra; Monroe, supra; Klein v. United States, 139 U.S.App.D.C. 368, 433 F.2d 526 (1970), cert. denied, 402 U.S. 944, 91 S.Ct. 1612, 29 L.Ed.2d 112 (1971); On Lee v. United States, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270 (1951); Koran v. United States, 408 F. 2d 1321 (5th Cir. 1969); and United States v. Jackson, 390 F.2d 317 (2d Cir. 1968).

The affidavit of the three monitoring officers in the present case reveals that during the investigative stage, in July and August of 1970, eight separate conversations of Skouloukas with Enten or Lemonakis were monitored and recorded with the knowledge and consent of the informant Skouloukas. In the case of telephone monitorings, a suction-cup device connected to a cassette tape recorder was placed on the receiver being used by Skouloukas. Nearby agents listened to Skouloukas' half of the conversation and then immediately played back the tape of the entire recording including both sides of the conversation for authentication purposes. In the face-to-face meetings, a wireless transmitter ("body mike") concealed on Skouloukas' person broadcasted the conversation between the informant and defendant Enten on a frequency being received by a radio receiver nearby which permitted simultaneous monitoring by the agents as well as a tape recording of the conversation. Due to a malfunction in the tape recorder component, the monitored face-to-face meeting of July 15, 1970 did not result in a tape recording. As a consequence, the monitored face-to-face conversation of July 26, 1970 was recorded by hand-holding the mike to a separate tape recorder near the speaker of the radio receiver which the agents used to monitor the conversation. The affidavit of the agents indicates that their monitoring of the conversation was satisfactory but that their cramped position in a car and the fact that the tape recorder mike had to be hand-held near their monitor speaker caused various distortions on the recording which was of very poor quality. Defendants have raised their strongest objections to the admissibility of this particular recording.

The issue before the Supreme Court in White was whether the Fourth Amendment bars from evidence the testimony of governmental agents who related certain conversations which had occurred between defendant White and a government informant, Harvey Jackson, and which the agents overheard by monitoring the frequency of a radio transmitter carried by Jackson and concealed on his person. A total of eight conversations were monitored by the concealed agents. The prosecution was unable to locate and produce the informant, Jackson, at the trial and the trial court overruled objections to the testimony of the agents who conducted the electronic surveillance. The jury returned a guilty verdict, the Seventh Circuit reversed,

and the Supreme Court reversed that Court of Appeals.

In upholding White's conviction, the Supreme Court ruled that no violation of the defendant's Fourth Amendment rights resulted from the admission of the police officers' testimony of what they monitored. As the Court said:

"* * * For constitutional purposes, no different result is required if the agent instead of immediately reporting and transcribing his conversation with defendant, either (1) simultaneously records them with electronic equipment which he is carrying on his person, Lopez v. United States, *supra;* or (2) carries radio equipment which simultaneously transmits the conversation either to recording equipment located elsewhere or to other agents monitoring the transmitting frequency. On Lee v. United States, *supra.* * * * If the law gives no protection to the wrongdoer whose trusted accomplice is or becomes a police agent, neither should it protect him when that same agent has recorded or transmitted the conversations which are later offered in evidence to prove the State's case. See Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963)." 401 U.S. at 751–752, 91 S.Ct. at 1126.

In *Klein, supra,* Judge Smith of this court was confronted with the identical issue, that is, the admissibility of tape recordings of statements (one of which was largely inaudible) made by defendant Klein to an informant as well as the testimony of the monitoring officers. Judge Smith admitted the tape recordings into evidence, including a recording with substantially inaudible portions. This latter recording was admitted under the rule of Monroe v. United States, *supra,* over strenuous defense objections

as to its inaudibility. In addition, the monitoring officers were allowed to testify from their recollection as to the conversation which they stated they had heard clearly, despite the static and interference on the tape.

In *Monroe,* Judge Matthews of this court was affirmed by the Court of Appeals in admitting tapes with unintelligible portions:

"No all–embracing rule on admissibility should flow from partial inaudibility or incompleteness. The Court of Appeals for the Third Circuit, in United States v. Schanerman, 150 F. 2d 941, 944, has said that partial inaudibility is no more valid reason for excluding recorded conversations than the failure of a personal witness to overhear all of a conversation should exclude his testimony as to those parts he did hear. Unless the unintelligible portions are so substantial as to render the recording as a whole untrustworthy the recording is admissible, and the decision should be left to the sound discretion of the trial judge. * * * *" 234 F.2d at 54–55.

Thus, the present problem does not appear to be one of first impression. Current decisions of this Circuit and the Supreme Court have supported the admission of the type of evidence which the government now proffers to this Court. For the foregoing reasons, the defendants' renewed motion to suppress the monitored, tape-recorded out-of-court statements of the defendants Enten and Lemonakis is hereby denied. Government counsel will be permitted to introduce into evidence the testimony of the monitoring agents as to what they monitored as well as the tape recordings of all conversations including the July 26, 1970 face-to-face meeting.