UNITED STATES of America,
Appellee,

v.

Jose Francisco SAN MARTIN, Appellant.

No. 79, Docket 72–1481.

United States Court of Appeals,
Second Circuit.

Argued Sept. 26, 1972.

Decided Nov. 10, 1972.

**6**

Joseph I. Stone, New York City, for appellant.

George G. Bashian, Jr., Asst. U. S. Atty. (Robert A. Morse, U. S. Atty., E.D.N.Y., David G. Trager and L. Kevin Sheridan, Asst. U. S. Attys., of counsel), for appellee.

Before HAYS, OAKES and TIMBERS, Circuit Judges.

OAKES, Circuit Judge:

This appeal from a narcotics conviction[1] raises interesting questions regarding use of a wiretap. It is necessary to summarize the evidence briefly to put the wiretap issues in context.

Through an intermediary (Nicolay), appellant made arrangements in Montevideo with one Gonzalez to smuggle into the United States some "Golden Watches" which later turned out to be 155 pounds of heroin. Nicolay delivered four suitcases and an attache case full of "watches" to Gonzalez who flew with them to Panama. Gonzalez' nephew Richard, who had a diplomatic passport because his father was Panamanian ambassador to Formosa, with a friend took Braniff fight #906 with the suitcases checked through to Kennedy Airport in New York. A case of nerves, a visitor's rather than a diplomat's visa, and the weight of the suitcases triggered the skepticism of a customs officer, with the result that Richard's diplomatic-passport gambit did not permit him to clear customs check-free. The suitcases were inspected and the golden watches turned into white "snow." Richard, caught red-handed, agreed to cooperate with the customs agents who rented a room adjoining his at the Hotel McAlpin from which, with Richard's consent, they "bugged" his telephone.

Gonzalez came to New York and to the McAlpin the following day, telling a taxi driver (who not by chance was really a customs agent) that he had a "friend" at the Edison Hotel but that he wanted to go to the McAlpin. When he arrived he walked right into the customs agents' skillfully laid trap by going to Richard's room and calling appellant at the Edison on the "bugged" phone to set up a rendezvous for an hour later at the Edison bar. Gonzalez was then arrested and, *without being told by anyone about the "bug,"* agreed to cooperate. The agents accordingly put the bags of heroin in a rental car parked in the APCOA garage at Broadway and 32nd Street and kept an eye on the bait for the new trap. Gonzalez went to the Edison bar and gave appellant the claim check for the rental car. A little wary apparently, appellant made a telephone call, after which he and Gonzalez agreed to meet subsequently. Apparently pursuant to the phone call, one Altamirano—soon joined by his brother—(both of whom were co-defendants and found guilty on the conspiracy count and do not appeal)

---

1. In connection with 155 pounds of heroin from Panama, the appellant was found guilty of possession on board an aircraft arriving in the United States, 21 U.S.C. § 955 and 18 U.S.C. § 2, of importation, 21 U.S.C. § 952(a) and 18 U.S.C. § 2, and conspiring to possess that amount of heroin with intent to distribute, 21 U.S.C. § 846, and was sentenced to 12 years' imprisonment on each count, the sentences to run concurrently.

took the claim check from appellant, and after an elaborate 40 or 50 block walk that took them all the way up to 54th Street went to the garage back at 32nd and Broadway. The brother paid the $3.25 parking fee and entered the rental car. The Altamiranos and appellant were promptly arrested by the agents watching the "golden watches."

Appellant contends that the wiretap of his telephone conversation with Gonzalez was illegal and that the "fruits" of that wiretap, presumably the subsequent surveillance of the appellant and the willingness of Gonzalez to cooperate with the agent, thus taint his conviction. Were we to decide the issue, the legality of the wiretap would raise difficult and important questions of statutory interpretation and constitutional law.[2] Under the wiretap statute now in effect a telephone conversation can be intercepted by a "person acting under color of law . . . where . . . one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(2)(c). Concededly Richard consented to the tap, and indeed initially placed the call, but the questions remain whether he was a "party to the communication" and whether his consent should be extended to apply to a conversation solely between Gonzalez and the appellant here.[3]

Even were we to decide that the statute applied, the question of the constitutional sufficiency of Richard's consent alone would remain. Telephone conversations have been held to be "searches and seizures" within the ambit of the fourth amendment. Katz v. United States, 389 U.S. 347, 353, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), overruling Olm-

stead v. United States, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (1928). There is authority interpreting 47 U.S.C. § 605 that both parties to a telephone conversation must consent to "divulge or publish" the contents of the communication. United States v. Polakoff, 112 F.2d 888, 889 (2d Cir.), cert. denied, 311 U.S. 653, 61 S.Ct. 41, 85 L.Ed. 418 (1940) (L. Hand, J.) ("Every telephone talk, like any other talk, is antiphonal; each party is alternately sender and receiver and it would deny all significance to the privilege created by § 605 to hold that because one party originated the call he had power to surrender the other's privilege"). Judge Hand's opinion was cited with approval in Goldstein v. United States, 316 U.S. 114, 121 n. 13, 62 S.Ct. 1000, 86 L.Ed. 1312 (1942). True, United States v. White, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971), held that the fourth amendment did not bar testimony based on the warrantless eavesdropping of Government agents by means of a transmitter worn by an informer when meeting with the defendant, and perhaps this indicates that the consent of both parties is not a constitutional prerequisite. True also, the Ninth Circuit, relying on *White*, has apparently held that consent to eavesdropping by one party to a telephone conversation is sufficient under the statute and the statute thus interpreted is constitutionally unobjectionable. United States v. Puchi, 441 F.2d 697, 700 (9th Cir.), cert. denied, 404 U.S. 853, 92 S.Ct. 92, 30 L.Ed.2d 92 (1971). Nonetheless, there still is a factual, if not a functional, difference between eavesdropping into personal conversations and intercepting telephonic communications which could distinguish *White* from this case.

2. Many of the questions concerning the legality of the wiretap could have been avoided if the agents had utilized the provisions of 18 U.S.C. § 2518(7)(a) which permits wiretapping provided there is an "emergency situation . . . with respect to conspiratorial activities . . . characteristic of organized crime" and provided there is an application for a warrant within 48 hours. *Cf.* United States v. Singleton, 460 F.2d 1148 (2d

Cir. 1972), petition for cert. pending, No. 72–5068 (2–1 decision). In saying this, however, the writer of this opinion in no way intends to retract the views expressed in the dissent in *Singleton*.

3. Obviously, the issue of appellant's standing to question the legality and constitutionality of the tap is intimately related to the question how far Richard's consent extends.

■ But we need not decide the difficult statutory and constitutional issues this case might raise, for the fruits of the wiretap even if illegal had an independent source. This makes full consideration of the other issues unnecessary. *E. g.*, Wong Sun v. United States, 371 U.S. 471, 477–478, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); United States v. Cole, 463 F.2d 163, 171–174 (2d Cir. 1972). Here the contents of the conversation were not incriminating or offered in evidence. True, Gonzalez agreed to cooperate after he had made his telephone call to appellant. But Gonzalez' cooperation was not effected by the use of the tap as was the case in Weiss v. United States, 308 U.S. 321, 330, 60 S.Ct. 269, 84 L.Ed. 298 (1939). He cooperated because his nephew Richard had cooperated and because he knew he faced serious charges. There was clearly an independent basis for arresting Gonzalez without the tap. Nor does appellant have standing to object to any violation of Gonzalez' rights. Alderman v. United States, 394 U.S. 165, 174, 89 S.Ct. 961, 966, 22 L.Ed.2d 176 (1969) ("Fourth Amendment rights are personal rights which . . . may not be vicariously asserted.").

To be sure, even though the call was not incriminating, knowledge of the contents of the call could have led the agents to the Edison and to appellant. But the test to be applied is whether even "granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." Wong Sun v. United States, supra 371 U.S. at 488, 83 S.Ct. at 417, quoting Maguire, Evidence of Guilt 221 (1959). Had the tap alone led the agents to the Edison and to appellant, evidence of appellant's connection with and participation in obtaining delivery of the heroin would not be sufficiently purged of primary "taint," and we would have to decide the questions of legality and constitutionality described above.

■ Here, however, the Government had an independent source, Gonzalez himself, for the evidence of appellant's involvement. We need not rely on the proposition that appellant could have been traced (perhaps with Gonzalez' cooperation) merely by following him. *Cf.* Silverthorne Lumber Co. v. United States, 251 U.S. 385, 392, 40 S.Ct. 182, 64 L.Ed. 319 (1920) (Holmes, *J.*) (dictum). For here the trial judge very wisely held a suppression hearing and found from evidence on the record that independently of the tap the Government agents learned of the fact that Gonzalez was going to meet San Martin because Gonzalez told them so. *Cf.* United States v. Wade, 388 U.S. 218, 239–242, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) (discussing independent source in the light of Professor Maguire's classic *Wong Sun* test). Thus, even if there were a poisoned tree (the wiretap) from which the Government plucked some fruit, it had an alternate healthy tree from which to eat. This is enough, we believe, to warrant admission of the evidence of appellant's meeting Gonzalez at the Edison bar and of what transpired thereafter.

The other questions presented by appellant, having been considered and found by us to be without merit, we pass by in the interests of avoiding proliferation of the published reports.

Judgment affirmed.

HAYS, Circuit Judge:

I concur in the result.