507 F.2d 629
 UNITED STATES of America
v.
Samuel J. SANTILLO, Jr., et al.
Appeal of Ronald F. BUCHERT.
 No. 74-1580.
 United States Court of Appeals, Third Circuit.
 Argued Nov. 1, 1974.
Decided Jan. 9, 1975.
 
 Stanton D. Levenson, Watzman, Levenson & Snyder, Pittsburgh, Pa., for appellant.
 Richard L. Thornburgh, U.S. Atty., Charles F. Scarlata, James J. West, Asst. U.S. Attys., Pittsburgh, Pa., for appellee.
 Appeal from the Judgment and Order of the United States District Court for the Western District of Pennsylvania.
 Before FORMAN, ALDISERT and ROSENN, Circuit Judges.
 OPINION OF THE COURT
 FORMAN, Circuit Judge.
 
 
 1
 Appellant Ronald F. Buchert and several co-defendants were indicted on three counts in the United States District Court for the Western District of Pennsylvania. Having waived his right to trial by jury, appellant was tried to the court and convicted on the second and third counts[1] of the indictment which charged (1) the unlawful distribution of methamphetamine on September 1, 1973 and (2) the possession of methamphetamine with intent to distribute it on September 28, 1973, both violations of 21 U.S.C. 841(a)(1)[2] and 18 U.S.C. 2.[3] In each of these transactions appellant allegedly supplied methamphetamine powder to co-defendant Frank J. Dorsey[4] who in turn sold, or intended to sell, the powder to Francis J. Schmotzer, a federal undercover agent. Agent Schmotzer never dealt face-to-face with appellant, but only through Dorsey.
 
 
 2
 Among pretrial motions made on appellant's behalf was one to suppress evidence obtained by the Government's warrantless 'interception' of telephone communications between appellant and Agent Schmotzer on September 12 and September 28, 1973, both of which were alleged to have been recorded by the Government.
 
 
 3
 The grounds for the motion were asserted to be that
 
 
 4
 (1) the telephonic communications were seized without the Government having previously obtained a court order pursuant to the Omnibus Crime Control Act, Title 3, Wiretap Provisions (18 U.S.C. 2510 et seq.);
 
 
 5
 (2) they were seized without the appellant's consent;
 
 
 6
 (3) they were seized in violation of appellant's Fourth Amendment constitutional rights; and
 
 
 7
 (4) 18 U.S.C. 2511(2)(c), which authorizes consensual interceptions, is unconstitutional.
 
 
 8
 The District Judge denied the motion, saying:
 
 
 9
 Defendant Buchert's motion to suppress telephone tapes of conversations between himself and an undercover agent will also be denied. Whatever expectation of privacy defendant Buchert had by virtue of Katz v. U.S., 389 U.S. 347 (88 S.Ct. 507, 19 L.Ed.2d 576) (1967), he gave up when he confided in the agent. This is clearly the import of Lopez v. U.S., 373 U.S. 427 (83 S.Ct. 1381, 10 L.Ed.2d 462) (1953). U.S. v. White, 401 U.S. 745, 753 (91 S.Ct. 1122, 28 L.Ed.2d 453) (1971). The recording of conversations between undercover agents and suspected wrongdoers may be a distasteful example of law enforcement activity, but in this instance it was not an activity which can be found to have violated defendant's constitutional rights.[5]
 
 
 10
 At trial, the prosecution connected appellant to the transactions by introducing evidence of the two telephone conversations he initiated with Agent Schmotzer, one linking him to the September 1 sale and the other connecting him to the attempted sale of September 28. On this appeal, Buchert submits that his conviction must be set aside because of the trial judge's failure to grant his motion to suppress evidence of the two incriminating telephone conversations.
 
 
 11
 Thus, the question presented by this appeal is whether one who engages in a telephone conversation may justifiably expect that the participant on the other end of the line will not record or disclose the substance of what is said. We hold in this case that such expectations of privacy are not 'justifiable' within the meaning of Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), and therefore are not entitled to the protection of the Fourth Amendment.
 
 
 12
 Conversation #1, linking appellant to the September 1 sale.
 
 
 13
 Agent Schmotzer's initial contact with appellant was by way of the September 12, 1973 telephone conversation during which appellant identified himself as the source of supply for the methamphetamine sold on September 1. Acting without a warrant, Agent Schmotzer taped the conversation, but due to an equipment malfunction the recording was inaudible. Agent Schmotzer, however, made extensive notes of the conversation from which he was able to testify at trial. As to this first conversation, appellant's challenge is simply that the Fourth Amendment prevents Agent Schmotzer from publicly disclosing information that was given to him in confidence.
 
 
 14
 Appellant's subjective expectation that Agent Schmotzer would not repeat the content of their discussion is not dispositive of whether the constitutional safeguards apply. See Katz v. United States, supra, at 361, 88 S.Ct. 507 (concurring opinion of Harlan, J.). The Fourth Amendment's protective umbrella, as interpreted by Katz, shields only those expectations of privacy which are 'justifiable.'[6] Measuring by this objective privacy standard, appellant had no right to assume that Agent Schmotzer would not relate the conversation to others. The possibility of repetition is a well-known risk that the prudent man weighs before disclosing confidential information. Moreover, under the facts of this case the risk of repetition was particularly strong. When the incriminating conversation took place appellant's only knowledge of Agent Schmotzer was that he had made a single purchase of methamphetamine from Mr. Dorsey.
 
 
 15
 Although United States v. White, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971), was decided according to pre-Katz interpretations of the Fourth Amendment, the principles espoused by a plurality[7] therein are appropriate here:
 
 
 16
 Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), which was left undisturbed by Katz, held that however strongly a defendant may trust an apparent colleague, his expectations in this respect are not protected by the Fourth Amendment when it turns out that the colleague is a government agent regularly communicating with the authorities. (The Fourth Amendment) affords no protection to 'a wrongdoer's misplaced belief that a person to whom the voluntarily confides his wrongdoing will not reveal it.' Hoffa v. United States, at 302, 87 S.Ct. at 413. No warrant to 'search and seize' is required in such circumstances.[8]
 
 
 17
 We conclude that appellant's disclosures to Agent Schmotzer during the telephone conversation of September 12, 1973 which connected appellant to the September 1 sale were not protected by the Fourth Amendment.
 
 
 18
 Conversation #2, linking appellant to the attempted sale of September 28.
 
 
 19
 On September 28, 1973, the same date as the attempted sale, appellant again spoke with undercover Agent Schmotzer by telephone. Acting without a warrant, Agent Schmotzer successfully recorded the conversation during which appellant identified himself as the source of supply for the methamphetamine to be sold later that day. In addition to Agent Schmotzer's testimony, the recording itself was played at trial, both over appellant's objection.
 
 
 20
 In considering the admissibility of 'conversation #1,' we concluded that Agent Schmotzer could properly take notes of his conversations with appellant and subsequently testify as to the content of their discussions. Our sole remaining question is whether the Fourth Amendment protects appellant when, instead of merely repeating what was said, the undercover agent records the conversation and is permitted to replay it at trial. Appellant concedes that only the constitutional issue is involved since electronic interceptions by a party to the conversation are expressly exempted from the warrant requirements of the Omnibus Crime Control Act. 18 U.S.C. 2511(2)(c).[9]
 
 
 21
 Prior to its decision in Katz, the Supreme Court consistently upheld various forms of electronic eavesdropping where one party to the intercepted conversation gave prior consent. See Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963); Rathbun v. United States, 355 U.S. 107, 78 S.Ct. 161, 2 L.Ed.2d 134 (1957); On Lee v. United States, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270 (1952). While we agree that the trespassory concepts[10] prevailing at the time these cases were decided have since been discredited,[11] it does not necessarily follow that the holdings themselves are no longer sound law. The continuing validity of Lopez, Rathbun and On Lee remains a subject of active detate.[12]
 
 
 22
 The governmental activity challenged here is most closely related to the participant monitoring discussed in the Lopez case. Both here and in Lopez a participant in the incriminating coversation secretly recorded what was said and that recording was later introduced as evidence against one of the speakers.[13] In analyzing this factual setting, the Supreme Court found no invasion of the speaker's Fourth Amendment guarantees:
 
 
 23
 Once it is plain that (the agent) could properly testify about his conversation with Lopez, the constitutional claim relating to the recording of that conversation emerges in proper perspective . . .. This case involves no 'eavesdropping' whatever in any proper sense of that term. The Government did not use an electronic device to listen in on conversations it could not otherwise have heard. Instead, the device was used only to obtain the most reliable evidence possible of a conversation in which the Government's own agent was a participant and which that agent was fully entitled to disclose . . ..
 
 
 24
 Stripped to its essentials, petitioner's argument amounts to saying that he has a constitutional right to rely on possible flaws in the agent's memory . . .. We think the risk that petitioner took in offering a bribe to (the agent) fairly included the risk that the offer would be accurately reproduced in court, whether by faultless memory or mechnical recording.
 
 
 25
 373 U.S. at 438-439, 83 S.Ct. at 1388.
 
 
 26
 The emphasized language closely resembles the Fourth Amendment expectation of privacy analysis required by Katz. In determining whether appellant's statements were made under circumstances which a reasonable person would assume to be free from 'uninvited ears,' it is logical to examine the potential risks of a breach of privacy. See also United States v. White, supra, 401 U.S. at 752-753, 91 S.Ct. 1122.
 
 
 27
 When appellant revealed his confidential information to agent Schmotzer, he undoubtedly assumed that the information would not be communicated further, least of all to the police. He would not have expressly consented to Agent Schmotzer's recording and replaying of the confidential disclosures any more than he would have permitted word-of-mouth repetition. Both forms of publication are, however, risks that the speaker who unveils confidential information must recognize. The mechanical ear of the recorder is no different than the ear of a listener with a precise memory.
 
 
 28
 The extent to which appellant's disclosures compromised his own secrets was intimately dependent upon his listener's trustworthiness. Viewed objectively, any continuing expectation that the information would remain confidential required consideration of the possibility of repetition, in whatever form. Our conclusion that appellant's expectations of privacy were not constitutionally protected is fortified by the Supreme Court's discussion in United States v. White, supra.
 
 
 29
 Our problem, in terms of the principles announced in Katz, is what expectations of privacy are constitutionally 'justifiable'-- what expectations the Fourth Amendment will protect in the absence of a warrant . . ..
 
 
 30
 Inescapably, one contemplating illegal activities must realize and risk that his companions may be reporting to the police. If he sufficiently doubts their trustworthiness, the association will very probably end or never materialize. But if he has doubts, or allays them, or risks what doubt he has, the risk is his . . .. Given the possibility or probability that one of his colleagues is cooperating with the police, it is only speculation to assert that the defendant's utterances would be substantially different or his sense of security any less if he also thought it possible that the suspected colleague is wired for sound. At least there is no persuasive evidence that the difference in this respect between the electronically equipped and the unequipped agent is substantial enough to require discrete constitutional recognition . . ..[14]
 
 
 31
 In addition, at least seven other circuit courts have applied Katz and reached a decision similar to the one we reach here.[15]
 
 
 32
 We are not unmindful of Justice Harlan's observation, in his White dissent, that expectations of privacy, and the risks a speaker assumes, are largely reflections of pre-existing Fourth Amendment law. 401 U.S. at 786, 91 S.Ct. 1122. Thus, Justice Harlan reasoned, instead of merely examining a particular individual's expectations, any Fourth Amendment analysis must ultimately focus on the impact a given police practice will have on the public's sense of security-- the fundamental concern of the Fourth Amendment. Id. In terms of the instant case, the underlying issue presented is whether we are willing to burden the average person with the threat of participant recording in order to provide the police with an admittedly valuable law enforcement tool.[16] We are conviced that publications of confidential information by the invited participant, as in this case, do not present the same kind of threat to a free society as was presented by the uninvited listener in Katz.[17] Warrantless electronic eavesdropping without the knowledge of either party to the conversation produces an atmosphere of police omniscience analogous to that produced by the general warrant of a by-gone era. Cf. Katz v. United States, supra at 358-359, 88 S.Ct. 507. See generally Stanford v. Texas, 379 U.S. 476, 482-484, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965). It is this broad transgression, different from that presented by the instant case, against which the Fourth Amendment is designed to protect. A more limited threat to the values of a free society arises from the risk that an invited participant may be electronically recording one's conversation for later replaying. We concede that, in the latter case, the conversation may eventually reach the same number and kind of people as if the electronic intrusion had been accomplished by an uninvited third party. The significant difference, however, is that private discussions are more likely to inhibited by the continuous threat of an uninvited listener.
 
 
 33
 We conclude that the unveiler of incriminating private information must assume some, but not all, possible risks of governmental intrusion. In the participant recording situation, the speaker need only contend with the trustworthiness of the person with whom he converses-- a factor which the speaker can evaluate and judge for himself prior to disclosing confidential information. Thus, in order to preserve his privacy, appellant Buchert had only to cautiously evaluate Agent Schmotzer's reliability. Having failed to accurately assess Agent Schmotzer's true intentions, appellant can fairly be made to bear the consequences of his misjudgment.
 
 
 34
 We hold that the district judge properly denied appellant's motion to suppress the testimony and recorded evidence obtained during Agent Schmotzer's telephone conversations. The judgment below will be affirmed.
 
 
 
 [1]
 Appellant was not named in the first count
 
 
 [2]
 21 U.S.C. 841(a)(1) provides:
 (a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally--
 (1) to manufacture, distribute, or dispense, or process with intent to manufacture, distribute, or dispense, a controlled substance ('controlled substances' are listed in the schedules established by 21 U.S.C. 812).
 
 
 [3]
 18 U.S.C. 2 provides:
 (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
 (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.
 
 
 [4]
 Frank J. Dorsey pleaded guilty
 
 
 [5]
 Appendix at A-11, A-12
 
 
 [6]
 In Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969), the Supreme Court held that the principles announced in Katz were not to be applied retroactively. Since the governmental activity challenged in the instant case took place long after December 18, 1967, the date Katz was decided, the Katz principles must be applied. Compare, e.g., United States v. White, 401 U.S. 745, 754, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971)
 
 
 [7]
 Only four of the nine participating Justices joined in the principal opinion authored by Justice White. Justices Black and Brennan filed separate concurring opinions. Separate dissents were filed by Justices Douglas, Harlan and Marshall
 
 
 [8]
 401 U.S. at 749, 91 S.Ct. at 1125
 
 
 [9]
 18 U.S.C. 2511(2)(c) provides in pertinent part:
 It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire or oral communication, where such persons is a party to the communication . . ..
 
 
 [10]
 Under the trespass doctrine only physical intrusions were prohibited by the Fourth Amendment. Goldman v. United States, 316 U.S. 129, 135-136, 62 S.Ct. 993, 86 L.Ed. 1322 (1942); Olmstead v. United States, 277 U.S. 438, 466, 48 S.Ct. 564, 72 L.Ed. 944 (1928). Thus, electronic surveillance was within the purview of the Fourth Amendment only in those instances where the listening device physically penetrated the speaker's premises. See, e.g., Silverman v. United States, 365 U.S. 505, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961)
 
 
 [11]
 See Katz v. United States, 389 U.S. 347, 352-353, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). '(The trespass) limitation on Fourth Amendment protection is, in the present day, bad physics as well as bad law, for reasonable expectations of privacy may be defeated by electronic as well as physical invasion.' Id. at 362, 88 S.Ct. at 517 (Harlan, J., concuring)
 Even prior to Katz, however, the Supreme Court had indicated some dissatisfaction with the trespassory concepts. See Berger v. New York, 388 U.S. 41, 45-51, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967); Silverman v. United States, 365 U.S. 505, 511-513, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961).
 
 
 [12]
 Four Justices among the Supreme Court's current membership have indicated their belief that Lopez and On Lee survive Katz. See United States v. White, 401 U.S. 745, 750-752, 91 S.Ct. 1122, 28 L.Ed.2d 453. Justices Brennan, Douglas and Marshall, on the other hand, argue that Katz implicitly overrules On Lee and perhaps also Lopez. See Id. at 755-756, 91 S.Ct. 1122 (Brennan, J., dissenting), at 758-760, 91 S.Ct. 1122 (Douglas, J., dissenting) and at 795-796, 91 S.Ct. 1122 (Marshall, J., dissenting)
 
 
 [13]
 Instead of recording a telephone conversation, the Federal agent in Lopez recorded, on a concealed wire recorder, a face-to-face conversation he had with the defendant. The recording was introduced at trial to corroborate the agent's in-court testimony relating to the conversation. 373 U.S. at 429-432, 83 S.Ct. 1381
 By was of comparison, On Lee and Rathbun are factually dissimilar to the instant case in that they both involve interceptions by a third party who did not participate in the conversation. In On Lee a former acquaintance, turned Government informer, engaged the petitioner in an incriminating conversation and simultaneously transmitted the discussion to a Federal agent hiding a short distance away, 343 U.S. at 749-750, 72 S.Ct. 967. In Rathbun police officers listened on a regularly used extension telephone at the request of one party to the call, 355 U.S. at 108, 78 S.Ct. 161. We make no determination as to whether these factual distinctions would lead to a different result than the one we reach here. Other circuits have examined post-Katz fact patterns which parallel the On Lee and Rathbun situations and have concluded that third-party interceptions accomplished with the consent of a participant do not violate the Fourth Amendment. See United States v. Bonanno, 487 F.2d 654 (2d Cir. 1973); United States v. Dowdy, 479 F.2d 213 (4th Cir. 1973), cert. denied 414 U.S. 823, 94 S.Ct. 124, 38 L.Ed.2d 56 (1973); Ansley v. Stynchcombe, 480 F.2d 437 (5th Cir. 1973); Holmes v. Burr, 486 F.2d 55 (9th Cir. 1973), cert. denied, 414 U.S. 1116, 94 S.Ct. 850, 38 L.Ed.2d 744 (1973); United States v. Quintana, 457 F.2d 874 (10th Cir. 1972), cert. denied, 409 U.S. 877, 93 S.Ct. 128, 34 L.Ed.2d 130 (1972).
 
 
 [14]
 401 U.S. at 752-753, 91 S.Ct. at 1126
 
 
 [15]
 See United States v. Bonanno, 487 F.2d 654, 658 (2d Cir. 1973); United States v. Dowdy, 479 F.2d 213, 229 (4th Cir. 1973), cert. denied, 414 U.S. 823, 91 S.Ct. 124, 38 L.Ed.2d 56 (1973); Ansley v. Stynchcombe, 480 F.2d 437, 441 (5th Cir. 1973); United States v. Lippman, 492 F.2d 314, 318 (6th Cir. 1974); Meredith v. Gavin, 446 F.2d 794, 797 n. 3 (8th Cir. 1971); Holmes v. Burr, 486 F.2d 55 (9th Cir. 1973), cert. denied, 414 U.S. 1116, 94 S.Ct. 850, 38 L.Ed.2d 744 (1973); United States v. Quintana, 457 F.2d 874 (10th Cir. 1972), cert. denied, 409 U.S. 877, 93 S.Ct. 128, 34 L.Ed.2d 130 (1972)
 
 
 [16]
 Justice Harlan did not actually apply his Fourth Amendment balance to the participant recording situation. He noted only that 'distinctions do, however, exist between Lopez, where a known Government agent uses a recording device, and (a case involving) third-party overhearing,' a practice which he considered unconstitutional. United States v. White, 401 U.S. 745, 788 n. 24, 91 S.Ct. 1122, 1145, 28 L.Ed.2d 453 (Harlan, J., dissenting)
 
 
 [17]
 In Katz, FBI agents attached an electronic listening device to the outside of a public telephone booth from which the petitioner regularly transmitted wagering information to his associates in other cities. The agents, acting without a warrant and without the knowledge of either of the conversing parties, recorded the petitioner's end of the discussion. Evidence of the conversation, introduced at trial, was ultimately rejected by the Supreme Court. 389 U.S. 347, 348, 88 S.Ct. 507 (1967)