UNITED STATES of America, Plaintiff-Appellee,

v.

Harold GLICKMAN aka Hal Glickman, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

James ROWE, Defendant-Appellant.

Nos. 78–1087, 78–2498, 78–1391 and 78–2900.

United States Court of Appeals, Ninth Circuit.

Sept. 14, 1979.

626

**628**

Richard P. Crane, Jr., Girardi, Keese & Crane, Homer Mason (argued), Theodore S. Flier (argued), Los Angeles, Cal., for defendants-appellants.

Paul G. Flynn, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before TRASK and WALLACE, Circuit Judges, and HOFFMAN,* District Judge.

TRASK, Circuit Judge:

Harold Glickman and James Rowe appeal their convictions of one count each of conspiracy, in violation of 18 U.S.C. § 371, and of corruptly endeavoring to influence an officer of a court of the United States, in violation of 18 U.S.C. § 1503. The object of the conspiracy was to offer $50,000 to a federal district court judge to obtain favorable treatment in the sentencing or bail status of a defendant in a criminal prosecution then pending before the district court. They also appeal from the denial of their motions for a new trial based upon newly discovered evidence. We affirm.

The appellants raise the following issues on appeal: (1) whether appellant Glickman was denied his sixth amendment right to confrontation by the failure of informant Goldman to appear at trial; (2) whether it was proper to admit the testimony of an investigator stating that she had contacted the county coroner to determine whether Goldman was dead; (3) whether the evidence was sufficient to support Rowe's conviction; (4) whether the court properly instructed the jury on the law of conspiracy; (5) whether appellants had the right to an evidentiary hearing on the capacity of Goldman to consent to act as an informant; and (6) whether the record contains conclusive evidence of Goldman's incompetency to consent.

On February 23, 1977, Ron Goldman, an inmate at the Los Angeles County Jail, told Jerry Thomas of the Los Angeles Police Department that he would be willing to help obtain evidence implicating Glickman in a cocaine operation. For his cooperation, Goldman was promised a recommendation that he be released on his own recognizance.

Goldman told Thomas on March 24, 1977, that Glickman had informed him that he wanted Goldman to determine whether a United States district court judge would, in exchange for $75,000, grant probation to Phil Izsak, a defendant awaiting sentencing.

At a meeting on March 30, 1977, attended by Goldman, Thomas, Deputy District Attorney Robert Schirn, and two district attorney investigators, Diane Eagan and Ronald Maus, it was agreed that Goldman would contact Glickman and that Eagan would be used as a "contact" with the district court judge. No threats or promises were made to Goldman.

On April 4, 1977, Goldman called Glickman and made a tape recording of the conversation. Goldman said that the best way to get to the judge was through the judge's girlfriend. Glickman told Goldman to contact the girlfriend. When Goldman suggested that $10,000 might be necessary to pay the judge, Glickman stated that the money would be given. The transcript of this conversation was admitted at trial only against Glickman and the jury was so instructed.

At 11:00 a. m. on April 8, 1977, Goldman called Glickman and arranged for Glickman to meet later in the day with Eagan, who Goldman said was the girlfriend of the district court judge. At 4:00 p. m. Goldman and Eagan, equipped with transmitters, came to Glickman's office at the King's Arms Restaurant in North Hollywood and there met with Glickman and Rowe. Investigator Maus placed two receivers and two tape recorders in a Ford van and recorded the whole meeting.

* The Honorable Walter E. Hoffman, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

The discussion at the meeting centered around how much money would be required to effectuate the bribe, who would provide the money, how the payoff would be made, concern over the number of people aware of the scheme, and, after Eagan left the meeting, concern that she was an undercover police investigator. Glickman stated that Izsak's parents would provide the money. It was agreed that the money would be paid to the judge through Eagan. Both Glickman and Rowe insisted that the only persons aware of the scheme were the four present at the meeting, and that neither Izsak nor his parents were told of the bribery. After Eagan left the meeting, Glickman and Rowe expressed concern that Eagan was an undercover agent and that they might be prosecuted for attempting to bribe a federal judge.

I

■ Before trial, Glickman moved to suppress the recordings of the telephone conversation between Glickman and Goldman on April 4, 1977, and of the meeting at Glickman's office on April 8, 1977, on the ground that Goldman did not voluntarily consent to the recordings. At the suppression hearing, the government introduced testimony of Officer Thomas, Deputy District Attorney Schirn, and Investigator Maus that Goldman had consented to the tape recording of his conversations with Glickman. Maus, at the hearing and at trial, and Eagan at trial, testified that, despite diligent efforts, they had been unable to locate Goldman. Glickman contends that the government's failure to procure the presence of Goldman, deprived him of his sixth amendment right to cross-examine Goldman regarding the veracity and authenticity of the tape recordings and his consent thereto. This argument is meritless.

1. The cases cited by Glickman, *Simmons v. United States*, 440 F.2d 890 (7th Cir. 1971), and *Park v. Huff*, 493 F.2d 923 (5th Cir. 1974), are inapposite. The *Park* opinion cited by Glickman has been withdrawn and a new en banc opinion substituted. *Park v. Huff*, 506 F.2d 849

■ This court in *United States v. Hart*, 546 F.2d 798, 799 (9th Cir. 1976), *cert. denied*, 429 U.S. 1120, 97 S.Ct. 1155, 51 L.Ed.2d 571 (1977), held that the government is not a "guarantor" of the presence of an informant at trial. The government is required only to use reasonable efforts to produce the informant, upon a proper request by the defendant. *Id.* The trial court's findings that the government has met its burden to produce the informant should be sustained unless clearly erroneous. *Id.* at 801.

■ Here, the trial court was not clearly erroneous in finding that the government had used reasonable efforts to produce the informant. The government introduced testimony of three witnesses at the suppression hearing detailing the government's efforts to locate Goldman. In addition to conducting a number of interviews of acquaintances and relatives of Goldman, the government issued a warrant against Goldman charging unlawful flight to avoid prosecution by California authorities and entered Goldman's name in the National Crime Index Computer. We have examined the record of the suppression hearing and trial and hold that there was abundant evidence to support the trial court's finding that the government met its burden.[1]

II

■ Glickman contends that the testimony of Investigator Eagan linked him to a crime not charged in the indictment and constituted prejudicial error requiring reversal. The relevant testimony is as follows:

Q. Did you make any inquiries at any time with the County Coroner's Office?

A. Yes, I contacted them also on that 9th of May.

Q. What was your purpose in contacting the County Coroner's Office?

(5th Cir.) (en banc), *cert. denied*, 423 U.S. 824, 96 S.Ct. 38, 46 L.Ed.2d 40 (1975). The language cited by Glickman is no longer in the newer opinion. *Simmons* is distinguishable because there the government made no effort to locate a declarant.

A. To ascertain whether Mr. Goldman was dead.

Glickman alleges that the "obvious inference" from Eagan's testimony is that he might have killed Goldman to prevent Goldman from testifying at trial.

Glickman's theory is unpersuasive. Under *Hart, supra*, the government had the burden of showing that it had made reasonable efforts to produce Goldman. Eagan's testimony regarding the coroner's office was introduced to show that the government had made reasonable efforts to locate Goldman. The government's attempt to show that it had discharged its burden included two pages of testimony by Investigator Maus and six pages of testimony by Eagan. The check of the coroner's office was merely a routine investigative procedure. Eagan did not even hint that Glickman or Rowe threatened or harmed Goldman. Moreover, because Eagan testified that Goldman's body was not found at the coroner's office, there was no evidence of a crime with which to connect the appellants.

■ Glickman further contends that the government made a second improper reference to his character during closing argument. There the government, referring to Eagan's presence at the meeting stated: "She was in a very dangerous position . . . ." Counsel for Glickman objected to this statement and the objection was sustained. Glickman alleges that the government's statement was an "obvious reference" that he was a dangerous person and constituted an attempt to convict him by establishing bad character.

The error, if any, was harmless. The trial court immediately sustained the objection to the prosecutor's statement and in its instructions to the jury admonished it that any evidence to which an objection was sustained by the court must be entirely disregarded and that statements and arguments of counsel are not evidence. *See United States v. Cordova*, 537 F.2d 1073, 1077 (9th Cir.), *cert. denied*, 429 U.S. 960, 97 S.Ct. 385, 50 L.Ed.2d 327 (1976); *United States v. Wycoff*, 545 F.2d 679, 682 (9th Cir. 1976), *cert. denied*, 429 U.S. 1105, 97 S.Ct. 1135, 51 L.Ed.2d 556 (1977). Furthermore, the evidence of Glickman's guilt was overwhelming. *See Cordova*, 537 F.2d at 1077; *Wycoff*, 545 F.2d at 682.

### III

■ Rowe alleges that the evidence is insufficient to convict him. He urges that the only evidence adduced against him concerned his presence at the April 8th meeting and that he did very little talking at the meeting.

The evidence presented by the government as to Rowe's participation in the meeting was sufficient to convict Rowe. Eagan testified that Rowe was present at the meeting for all but a few minutes. Rowe's wife testified that she was in a position to observe anyone leaving Glickman's office and that Rowe left the office only once during the meeting to take a call that lasted four or five minutes. Rowe told Eagan that Izsak's parents would pay for the bribe. He assured Eagan that only the four persons present at the meeting were aware of the bribery scheme. After Eagan left the meeting, Rowe exhibited extreme concern that Eagan might be "the heat." Rowe suggested a plan of action "to cover ourselves" if Eagan should turn out to be an undercover agent.[2]

---

2. Immediately after Eagan left the meeting, Rowe called his attorney, Frank. Rowe then stated to Goldman and Glickman:

> Rowe: If she [Eagan] turned out to be the heat, we could all pick up a f . . . charge.
> Goldman: Well, I can tell you this. She's not__ she's not the heat.
> Rowe: If she's not the heat, then there's no problem. But, ah, I want to be __ still make sure. The way you do this in which

__ every __ all parties are covered, and, ah, figure it out tonight.

Rowe then explained that he recognized Eagan as "a D.A. I've seen before." He warned Glickman and Goldman:

> Rowe: Listen __ listen. We should wait. We should __ don't tell Frank who's involved or what's involved because, like, lay the situation out, a similar situation out on the table to him and see what, ah, if he

On appeal from a conviction, the evidence must be viewed in the light most favorable to the government. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Rich*, 580 F.2d 929, 934 (9th Cir.) *cert. denied*, 439 U.S. 935, 99 S.Ct. 330, 58 L.Ed.2d 331 (1978). All reasonable inferences from the evidence must be drawn favorably to the government. *United States v. Winn*, 577 F.2d 86, 91 (9th Cir. 1978); *Yeargain v. United States*, 314 F.2d 881, 882 (9th Cir. 1963). The conviction will be affirmed if the jurors could have rationally concluded from the evidence presented that guilt was established beyond a reasonable doubt. *United States v. King*, 552 F.2d 833, 852 (9th Cir.), *cert. denied*, 430 U.S. 966, 97 S.Ct. 1646, 52 L.Ed.2d 357 (1977); *United States v. Nelson*, 419 F.2d 1237, 1243 (9th Cir. 1969). Here there was abundant evidence from which the jury could rationally conclude that guilt was established beyond a reasonable doubt.

## IV

After the jury began deliberations, it sent a note to the trial judge requesting additional guidance regarding the law of conspiracy.[3] After discussing the jury note with the attorneys for all parties, the trial judge informed counsel of his proposed response. Then, the trial judge sent a note to the jury in reply.[4] Neither of the attorneys for the appellants objected to the wording of the note.

The defendants contend that the supplementary instruction advised the jury to convict both defendants on the conspiracy charge if it found sufficient evidence to convict either defendant. The appellants conceded that if only two persons had been charged with conspiracy in the indictment, the instruction would have been unobjectionable because the acquittal of one would require acquittal of the other. They point out, however, that the conspiracy count of the indictment charged in addition to Glickman and Rowe, "others both known and unknown to the grand jury." The appellants allege that evidence was adduced at trial linking Izsak, Izsak's family, and Goldman to the conspiracy. They argue that the jury might have found that a conspiracy existed between only one of the appellants and one or more of the unnamed members of the conspiracy, but, on the basis of the supplementary instruction, erroneously concluded that the other appellant must also be convicted of the conspiracy charge.

Because the appellants did not object to the supplementary jury instruction at trial, it cannot be challenged on appeal unless the instruction constituted

---

can't come up with, you know, with some way to cover ourselves.

Glickman: The only thing __ the only thing __ the only thing I wanted __ wanted to __ wanted to know, if it's you know, if __ what happened here now, if that __ if that's any part of the conspiracy.

Rowe: No. tha__ Loo__ see __ this __ if it didn't __ it didn't __ if it didn't go __ if it didn't go any further than this, ah, there's no money exchanging hands. We haven't broke any laws yet. Yeah. But you __ you know, but you __ if you were the cops, you are on the way in.

Goldman: Well, I got news for you. If it had been a cop, they damn sure wouldn't have held out the way she held out.

Rowe: No. It was __ see, they would __ they would __ they would have to play their cards right to get you all the way through. They couldn't __ you see, if someone's smart and they smell a fish, this whole deal's gonna fall down.

**3.** The note was not a model of clarity. It read:

Judge Murray__
Is (sic) the conspiracy charge against either defendants (sic) mean that the conspiracy has to be between Glickman and Rowe only?

**4.** No record was kept as to what was said at the conference. Additionally, the original note of the trial judge has been lost. Sometime after trial, the judge's law clerk attempted to reconstruct the content of the note. The law clerk's reconstruction, added to the district court file, states:

No. There can be no conviction of one defendant without conviction of the other defendant in this case.

At a hearing on June 1, 1978, the trial judge stated that the law clerk's reconstruction "doesn't sound like the note that had been written," although he could not recall what the note actually said. We assume, *arguendo*, that the law clerk's reconstruction is accurate.

**632**

plain error. *United States v. Nace*, 561 F.2d 763, 771 (9th Cir. 1977); *Egger v. United States*, 509 F.2d 745, 749 (9th Cir.), *cert. denied*, 423 U.S. 842, 96 S.Ct. 74, 46 L.Ed.2d 61 (1975); Fed.R.Crim.P. 30, 52(b). An improper instruction rarely justifies a finding of plain error. *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977).

It is apparent from the jury's note that it was confused about a point of law. "When a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy." *Bollenbach v. United States*, 326 U.S. 607, 612–13, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946).

The ultimate question is "whether the charge taken as a whole was such as to confuse or leave an erroneous impression in the minds of the jurors." *Powell v. United States*, 347 F.2d 156, 158 (9th Cir. 1965). We have noted that: "It is no answer to say that the supplemental instruction was correct, so far as it went; or that it was to be read in the light of the original instructions and that these fairly presented the issues." *Id.*

 Although the question addressed to the trial judge by the jury was unclear, it appears that the jury wanted to know whether it was required to find Glickman and Rowe not guilty of conspiracy if it determined that there were members of the conspiracy other than Glickman and Rowe. The trial judge correctly replied "no" because the indictment did not charge that only the appellants were members of the conspiracy, but included "others known and unknown." A determination that there were other members of the conspiracy would not preclude a finding that Glickman and Rowe were guilty of a conspiracy.

The judge's note read as a whole was not so prejudicial as to require reversal under the plain error standard. If there was any error in the instruction, it made the government's burden of proof even more difficult. Even on the appellants' reading of the note, the government could not obtain a conviction of one defendant unless it presented evidence of guilt sufficient to convict the other defendant as well.

The appellants' contention that the jury might have found that a conspiracy existed between only one of the appellants and one or more of the unindicted conspirators is without merit. The evidence adduced at trial showed that only Glickman and Rowe were members of the conspiracy. Both Rowe and Glickman insisted at the April 8th meeting in Glickman's office that only Glickman, Rowe, informant Goldman, and undercover agent Eagan were aware of the plan.

Glickman urges the fanciful contention that the jury, contrary to all the evidence adduced at trial, might have found that a conspiracy existed between the informant Goldman and one of the appellants. We reject this contention. There was not one shred of evidence that Goldman was a member of the conspiracy and not a government informant.

 Appellants argue also that the language in the note—"in this case"—refers to the substantive charge as well as to the conspiracy charge and, thus, that the note is also an erroneous statement of the law concerning the substantive charge because one person charged as a conspirator can be convicted of the substantive offense even though all others charged as coconspirators are found not guilty.

We reject the appellants' contention that the note of the trial judge incorrectly instructed on the substantive offense. The note was a reply to the jury's request for further guidance on the law of conspiracy. There is no reasonable possibility that the jury understood the note to be an instruction on the substantive offense as well as on the law of conspiracy.

We conclude that the supplemental instruction by the court did not constitute plain error.

V

Appellants also appeal from the denial of their motion for a new trial based on newly discovered evidence. After trial, Glickman

discovered three psychiatric evaluations of Goldman conducted in September 1975 and in January 1978. Appellants moved for a new trial based on newly discovered evidence. The issue raised in the motion was whether Goldman possessed the mental capability to consent to have his conversation with the appellants recorded by the government.

Appellants argue that they were denied their right to a full evidentiary hearing on their motion for a new trial. Specifically, they contend that the court prevented a meaningful hearing by refusing to allow two psychiatrists present at the hearing to testify concerning Goldman's sanity and by refusing to adjourn the hearing to allow psychiatrists to examine Goldman. At the hearing, the attorney for Glickman made an offer of proof concerning the testimony of the two psychiatrists. Counsel stated that Dr. Sargent would testify based on his examination on September 9, 1975, that Goldman suffered from a schizophrenic disorder, paranoid type, of long standing, and was in need of further hospital evaluation and treatment. Dr. Sargent also, if called, would have testified that Goldman, as of the date of the hearing, was incompetent to be sentenced and was not able to assist properly in his defense. Counsel stated also that Dr. LaWall, on the basis of the report of January 5, 1978, would testify that, as of the date of the hearing, Goldman was incompetent to stand trial due to a major mental illness, the exact nature of which was unclear.

Notably, the offer of proof omitted any reference to Goldman's ability to consent to have his conversations with the appellants recorded by the government. Also, there was no proof offered concerning Goldman's mental state during March and April 1977, when the conversations were recorded.

■ There is no general requirement that a court call or hear expert testimony on the question of a witness's competency. The court has much discretion and it is not an abuse of discretion to refuse to hear such evidence. *United States v. Barnard*, 490 F.2d 907, 912 (9th Cir. 1973), *cert. denied,* 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974).

■ There was no error in excluding evidence of the testimony of the psychiatrists. The offer of proof was insufficient as a matter of law to prove that Goldman was incapable of consenting. Even assuming the truth of the proffered evidence, it does not show that Goldman was mentally incapable of consenting to the recordings as of March and April 1977. The district court was correct in refusing to allow the testimony of two psychiatrists present at the meeting and in refusing to allow an adjournment to allow psychiatrists to examine Goldman.

## VI

Appellants argue that even without the testimony of the two psychiatrists the record contains conclusive evidence of Goldman's incompetency to consent, thus warranting a new trial. They contend that the letters and memos of the psychiatric evaluations of Goldman lodged with the court conclusively establish Goldman's incompetency to consent. We reject this contention.

The letters and memos presented to the court were from three psychiatrists: Sargent, LaWall, and Gurland. The papers from Sargent and LaWall contained substantially the same information as was presented in the appellants' offer of proof at the hearing. Based on his January 1978 examination of Goldman, Gurland stated in his psychiatric evaluation that Goldman was incompetent to stand trial at that time and was suffering from a chronic schizophrenia condition, paranoid type. Gurland's evaluation was thus similar to LaWall's.

■ The extent of proof required to show that an informer consented to the monitoring or recording of a conversation is considerably less stringent than that needed to show consent to a physical search. *See United States v. Fuentes*, 563 F.2d 527, 533 (2d Cir.), *cert. denied,* 434 U.S. 959, 98 S.Ct. 491, 54 L.Ed.2d 320 (1977); *United States v. Bonanno*, 487 F.2d 654, 658 (2d Cir. 1973).

The reasons for the less stringent standard regarding conversations is that:

> In cases involving physical search, the person alleged to have consented is doing something apparently contrary to his own interests or to those of another who often is in some way connected with him. An informer's consent to the monitoring or recording of a telephone conversation is an incident to a course of cooperation with law enforcement officials on which he has ordinarily decided some time previously and entails no unpleasant consequences to him.

*Id.* at 658.

In order to establish consent to taping of conversations, it will ordinarily suffice for the government to show that the informant engaged in the conversation knowing that it was being taped. *Id.* at 658–59; *United States v. Kirk*, 534 F.2d 1262, 1272–73 (8th Cir. 1976), *cert. denied*, 433 U.S. 907, 97 S.Ct. 2971, 53 L.Ed.2d 1091 (1977).

The testimony presented at the pretrial hearing on the motion to suppress, at trial, and the tapes themselves provide abundant evidence that Goldman knew that his conversations were going to be taped, and that he agreed to have them taped.

The letters and memos of the psychiatrists filed with the motion for a new trial did not show that Goldman was incapable of consenting. These documents were not addressed to the issue of Goldman's ability to consent to have his conversations with the appellants recorded by the government. Furthermore, the documents did not discuss Goldman's mental state at the time the recordings were made in March and April 1977, but discussed his mental state only as of 1975 and 1978.

Appellants also argue that the government had the burden of proving that Goldman had the capacity to consent to the recordings but failed to meet its burden because it failed to introduce any evidence that Goldman was sane when he purportedly consented.

We reject this argument. Finding no decisions addressed to this issue, we find guidance in principles governing the issue of the sanity of a criminal defendant. We start with the assumption that persons are sane when they give their consent to have their conversations recorded. It is not incumbent on the prosecution to prove sanity until the defense presents evidence to the contrary. *See United States v. Hearst*, 563 F.2d 1331, 1336 n.2 (9th Cir. 1977), *cert. denied*, 435 U.S. 1000, 98 S.Ct. 1656, 56 L.Ed.2d 90 (1978); *United States v. Monroe*, 552 F.2d 860, 863 (9th Cir.), *cert. denied*, 431 U.S. 972, 97 S.Ct. 2936, 53 L.Ed.2d 1009 (1977).

The offer of proof introduced by the defense was not addressed to Goldman's capacity to consent or mental state at the only relevant time—when the recordings were made. Accordingly, the evidence was insufficient to shift the burden to the prosecution to prove that Goldman had the capacity to consent.[5]

In each appeal, the judgment appealed from is AFFIRMED.

---

**5.** *United States v. Elrod*, 441 F.2d 353 (5th Cir. 1971) and *United States v. Napier*, 451 F.2d 552 (5th Cir. 1971) are not helpful to the appellants. *Elrod* is distinguishable because *Elrod* involved a defendant's consent to the search of his hotel room and not, as here, with an informant's consent to the recording of a phone conversation. The extent of proof required to show that the informant consented is therefore less stringent. *United States v. Bonanno*, 487 F.2d at 658.

*Napier* is likewise inapposite. *Napier* did not establish any standards for determining whether the government has the burden of introducing psychiatric testimony to show that the informant had the mental capacity to consent. Furthermore, the trial court in *Napier* had not made a specific finding that the informant had consented to the recordings. Here, the trial court determined at a pretrial hearing on the motion to suppress that Goldman had consented to the recordings.