**UNITED STATES of America, Plaintiff,**

v.

**Carlos MARCELLO, Samuel Orlando Sciortino, and Phillip Rizzuto, Defendants.**

**Crim. No. EJD–81–720.**

United States District Court, C. D. California.

Feb. 12, 1982.

Andrea Sheridan Ordin, U. S. Atty., James D. Henderson, Bruce J. Kelton, Los Angeles Strike Force, Dept. of Justice, Los Angeles, Cal., for United States.

Arthur A. Lemann, III, and Provino C. Mosca, New Orleans, La., for defendant Marcello.

Richard Cabellero, Beverly Hills, Cal., for defendant Sciortino.

Thomas R. Dyson, Washington, D. C., for defendant Rizzuto.

## MEMORANDUM

DEVITT, Senior District Judge.

By an order dated November 27, 1981, this court denied defendants' motion to suppress evidence and for an evidentiary hearing on the motion to suppress. Defendants are charged in a three count indictment with conspiring to bribe United States District Judge Harry Pregerson of the Central District of California in order to obtain

favorable treatment for defendant Sciortino and others in a criminal prosecution over which Judge Pregerson was presiding.

This motion was brought by defendant Marcello and joined in by the other two defendants. The defendants seek to suppress evidence obtained by the government as a result of certain court ordered wire and oral interceptions. The first interceptions relevant to this motion were authorized in connection with what has come to be referred to as the "Brilab" investigation by the United States District Court in the District of Columbia on May 4, 1979. This authorization covered a telephone listed to one I. Irving Davidson, was extended by that court on June 13, August 20, and September 22, 1979. Additional wire and oral interception authorizations were issued in the Eastern District of Louisiana. These covered defendant Marcello's business and residential telephone numbers, and oral communications occurring at Marcello's office and fishing camp.

An affidavit dated May 4, 1979 signed by Special Agent Charles Walker of the Federal Bureau of Investigation was submitted in support of the May 4 authorization and also served as the basis of the subsequent authorizations. The defendants' grounds for the motion to suppress are that the affidavit of May 4, 1979 did not establish probable cause, that the affidavit contains intentional misrepresentations and omissions by the affiant, that the government failed to make the requisite showing of necessity for the interceptions, and that the government failed to properly minimize the interceptions. The defendants also move to suppress consensual interceptions on the ground that the consenting party to the intercepted conversations failed to give knowing and voluntary consent for the interceptions. Additional grounds asserted for suppression are that 18 U.S.C. § 2510 *et seq.* is unconstitutional, that the applications for interceptions failed to contain full and complete statement of facts concerning prior applications, and that the intercept orders are directed toward obtaining evidence of future crimes.

The government takes the position that only defendant Rizzuto should be permitted to attack the affidavit offered to establish probable cause for the interceptions occurring in these proceedings. It asserts that Sciortino has no standing to seek exclusion of any evidence obtained through the interceptions, and that Marcello is collaterally estopped from doing so.

STANDING

■ The government asserts that Sciortino has no standing to challenge the Title III wiretaps to be used in this case obtained as a result of the court orders issued in the District of Columbia and Eastern District of Louisiana because he was neither a party to any of these intercepted conversations, nor did these interceptions occur on his premises. Sciortino has not responded to this assertion. This court's independent *in camera* examination of the status reports submitted to the courts in the District of Columbia and Eastern District of Louisiana in connection with the Title III interceptions in issue indicate that Sciortino was never intercepted pursuant to these authorizations, nor were his premises ever involved in the interceptions. Accordingly, he does not have standing to seek suppression of the court ordered interceptions. · *See Alderman v. United States,* 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969); *United States v. Jabara,* 618 F.2d 1319 (9th Cir. 1980).

COLLATERAL ESTOPPEL

The government argues that Marcello is precluded from litigating this suppression motion because these matters were fully litigated between the same parties in another criminal prosecution. The affidavit of May 4, 1979 was the basis for authorizations for interceptions which produced evidence that Marcello sought to suppress in connection with a prosecution in the Eastern District of Louisiana arising out of the Brilab investigation. Substantially the same grounds for suppression were asserted in that motion, which was denied. *See United States v. Marcello,* 508 F.Supp. 586 (E.D.La. 1981).

■ It is clearly established that the principal of collateral estoppel applies in criminal cases. *See, e.g., Ashe v. Swenson,*

397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970). There the Supreme Court defined the principle of collateral estoppel as follows: "[W]hen an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Id.* The Court cautioned that this principle should not be applied in criminal cases "with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality." *Id.*

■ The application of the principle of collateral estoppel to criminal proceedings is embodied in the Fifth Amendment guarantee against double jeopardy, *id.* at 445, 90 S.Ct. at 1195, and hence is generally applied to prevent the government from prosecuting a defendant on the basis of facts resolved in favor of a defendant in a prior acquittal. *See, e.g., Brown v. Ohio,* 432 U.S. 161, 166, n.6, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *United States v. Powell,* 632 F.2d 754, 757–58 (9th Cir. 1980). The government has not cited, nor has this court's independent review of the law revealed, any case in which a defendant has been precluded from litigating an issue presented by a motion to suppress, even though substantially the same issues were litigated in a different criminal prosecution for unrelated crimes.

■ In *United States v. Thoresen,* 428 F.2d 654 (9th Cir. 1970), one of two codefendants brought a suppression motion, which was fully considered by the trial court and denied. The indictment had been dismissed as to a second codefendant prior to the motion. *Id.* at 666. The defendants were reindicted by means of a superseding indictment. The trial court refused to afford either defendant a hearing on the suppression motion. The Court of Appeals held that it was error to deny the defendant who had not previously litigated the suppression motion an opportunity to do so after being reindicted. The court also allowed the defendant who had previously litigated the motion to participate in the hearing afforded his codefendant, based on considerations of fairness and consistency of result. *Id.* at 667. The same result is appropriate here. Defendant Rizzuto indisputably has a right to proceed with the suppression motion. Under these circumstances, Marcello will also be permitted to proceed with this motion.

PROBABLE CAUSE

The affidavit of May 4, 1979 seeks to establish probable cause on the basis of information related by governmental informant Joseph Hauser, and on the basis of consensual recordings of conversations occurring primarily between Joseph Hauser, I. Irving Davidson and defendant Marcello.

The defendants argue that these portions of the affidavit must be stricken because of the failure of the affidavit to conform with the requirements of *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). Specifically, defendants contend that the May 4 affidavit did not contain any allegations regarding Hauser's reliability, nor did it allege any corroborating facts from which the magistrate could determine the credibility of Hauser or the reliability of his information. Absent the information provided by Hauser, the defendants argue that the affidavit fails to establish probable cause.

■ Prior to the issuance of an order authorizing interception of wire or other communications, the issuing judge must determine that there is probable cause for the interception on the basis of facts supplied by the applicant for the order. 18 U.S.C. § 2518(3)(a). The standard of probable cause is the same as that for a regular search warrant. *United States v. Fury,* 554 F.2d 522, 530 (2d Cir.), *cert. denied,* 433 U.S. 910, 97 S.Ct. 2978, 53 L.Ed.2d 1095 (1977), *cert. denied,* 436 U.S. 931, 98 S.Ct. 2831, 56 L.Ed.2d 776 (1978); *United States v. Falcone,* 505 F.2d 478, 481 (3d Cir. 1974), *cert. denied,* 420 U.S. 955, 95 S.Ct. 1338, 43 L.Ed.2d 432 (1975).

■ This affidavit must be scrutinized in light of the two prong test set forth in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21

L.Ed.2d 637 (1969). The affidavit must supply the magistrate with sufficient underlying facts to show 1) the reliability of the information provided by an informant, and 2) that the informant is credible or reliable. If either prong of the *Aguilar* test is not met, probable cause may still be established by independent corroborating information. *Spinelli v. United States*, 393 U.S. at 417–18, 89 S.Ct. at 589–90; *United States v. Whitney*, 633 F.2d 902, 906 (9th Cir. 1980), *cert. denied*, 450 U.S. 1004, 101 S.Ct. 1717, 68 L.Ed.2d 208 (1981).

The May 4 affidavit contained sufficient information from which the judge could make a determination that the information provided by the government informant was reliable. Paragraphs 5 through 14 of the affidavit set forth underlying facts regarding past dealings involving bribes paid in connection with obtaining insurance business. Government informant Hauser related to the affiant in some detail his involvement in 1976 with I. Irving Davidson who assisted Hauser in obtaining insurance business.

The background information contained in Paragraphs 5 through 14, read together with the affidavit as a whole, warrant an inference that criminal activity occurred in connection with Hauser's acquisition of insurance contracts. The information concerning Hauser's past involvement with Davidson and Marcello was based in large part on Hauser's personal observations and participation in the described activities. The consensual tape recordings also provided corroboration for Hauser's assertions regarding his past dealings with these individuals.

■ There is sufficient information provided in the May 4 affidavit from which the issuing judge could conclude that Hauser was a credible informant. Moreover, to the extent that the information furnished by Hauser is firsthand, specific and detailed, it is "self corroborating." *See United States v. Banks*, 539 F.2d 14, 17 (9th Cir.), *cert. denied*, 429 U.S. 1024, 97 S.Ct. 644, 50 L.Ed.2d 626 (1976). A fair reading of the affidavit also reveals that Hauser's revelations concerning his earlier dealings with

Davidson and Marcello subject him to potential penal risk. This fact is appropriately considered in weighing an informant's credibility. *See United States v. Woods*, 550 F.2d 435, 438 (9th Cir. 1976). It is also obvious from the affidavit that Hauser placed himself in some personal danger in participating in recording the conversations between himself and Davidson and Marcello that are described in the affidavit. This is another factor that provides a basis for the conclusion that the affidavit contained sufficient information attesting to Hauser's credibility. *See United States v. Lefkowitz*, 618 F.2d 1313, 1316 (9th Cir. 1980); *United States v. Woods*, 550 F.2d 435, 438 (9th Cir. 1976).

■ In examining the May 4 affidavit, we are mindful that the affidavit should be considered as a whole, and that the conclusions of the issuing judge with regard to probable cause are to be accorded great deference. *See e.g., Spinelli v. United States*, 393 U.S. at 419, 89 S.Ct. at 590; *United States v. Fried*, 576 F.2d 787, 790–91 (9th Cir.), *cert. denied*, 439 U.S. 895, 99 S.Ct. 255, 58 L.Ed.2d 241 (1978). The May 4 affidavit supports a finding of probable cause by sufficiently setting forth the underlying facts showing the reliability of the information provided by the government informant, and the facts necessary to establish the credibility of the informant.

### INTENTIONAL OMISSIONS AND MISREPRESENTATIONS

Defendants assert that the May 4 affidavit intentionally omitted or misrepresented material facts necessary to the consideration of the existence of probable cause, and request an evidentiary hearing in conformity with *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). In considering defendants' motion for an evidentiary hearing in conformity with *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), we will assume that the *Franks* test applies to omissions from an affidavit, inclusion of which are necessary to prevent technically true statements from being misleading, or which are necessary to

ascertain the existence of probable cause. *See United States v. Lefkowitz*, 618 F.2d 1313, 1317, n.3 (9th Cir. 1980); *see also United States v. Martin*, 615 F.2d 318, 328 (5th Cir. 1980); *United States v. House*, 604 F.2d 1135, 1141, n.9 (8th Cir. 1979).

In *Franks* the Supreme Court recognized that the sufficiency of an affidavit offered in support of an application of a search warrant may be challenged on the ground that the affidavit contains deliberately or reckless false statements. The Court summarized its holding as follows:

> There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing. Whether he will prevail at that hearing is, of course, another issue.

438 U.S. at 171–72, 98 S.Ct. at 2684–85 (footnote omitted).

The offer of proof made at the hearing on this motion consisted of the consensual tapes, the transcripts of those tapes, and the transcripts of the *Franks* evidentiary hearing held before Judge Sear in the Eastern District of Louisiana involving essentially the same challenges to the same affidavit.

■ The defendants contend that the affidavit intentionally omitted the fact that government informant Hauser was a twice-convicted felon at the time he provided the information detailed in the affidavit, and that Hauser was cooperating with the government under the terms of a plea agreement which left open the sentence on a recent conviction. The defendants have failed to make a showing that omission of these facts was intentional or reckless. The affidavit does inform the issuing judge that Hauser was cooperating with the government (paragraph 15), and that Hauser was the subject of a federal criminal prosecution (paragraph 52). Even had the omitted facts been included in the affidavit, they would have not negated the conclusion that probable cause existed for the issuance of the wiretap authorization.

Defendants allege five specific instances of intentional misrepresentations in the May 4 affidavit. During a recorded meeting between Hauser and Marcello on April 2, 1979, Hauser asked Marcello if he had any influence with the New Orleans City Council. Paragraph 20 of the affidavit recites that the following exchange occurred:

"Joe Hauser (JH) "Do you have any juice there?"

Carlos Marcello (CM) "Yes I've got 'em all where I want 'em." The defendants assert that Marcello actually replied, "Yeah, I got them all what I want," and that the government intentionally misrepresented Marcello's words. The transcript of the New Orleans proceedings offered by the defendants to show the affiant intentionally misrepresented this conversation contains testimony by the affiant, Agent Walker, that he had only the tapes at the time he composed the May 4 affidavit. *See* Exhibit 24, *United States v. Carlos Marcello, et al.*, No. 80–274 (E.D.La.), Transcript of December 11, 1980, morning session, at 43–44. He did not have the transcripts of the tapes;

the transcript itself was not prepared until May 18, 1979. *See* Defendants' Exhibit 14. Moreover, this court has listened to the tape of the April 2, 1979, a number of times, and both the interpretations by the affiant and the defendants are reasonable. The inference that arises from either interpretation is that Marcello has influence with the City Council. Defendants have failed to make the required showing that: 1) there was a misrepresentation as to the content of this conversation; and 2) that any such misrepresentation was intentional or reckless.

The second instance of an alleged intentional misrepresentation is found in paragraph 23 of the affidavit. During the April 2, 1979 meeting, Hauser and Marcello also discussed a contract for Jefferson Parish, Louisiana. The affidavit states that Marcello said, "I can get Jefferson Parish too, that's my man over there, you understand?" The defendants assert that the conversation actually occurred as follows:

JH: "You can get Jefferson Parish too?"

CM: "Yeah, that's the main one I know, you understand?"

The transcript of the April 2, 1979 conversation reads:

Marcello: "I can give you Jefferson Parish too."

Hauser: "You can get Jefferson Parish too?"

Marcello: "Yeah, that's the main one. I'm understand?"

The affidavit quotes Marcello without the question interjected by Hauser. Marcello's response to Hauser's question is difficult to decipher in listening to the tape; whether he said, "that's my man . . ." or "that's the main one . . ." is unclear. Either interpretation is plausible. Given this, and the fact that Agent Walker did not have the benefit of the transcripts at the time he wrote the affidavit, the defendants have not made a showing that this was intentional or reckless misrepresentation. Moreover, replacing the statement in the affidavit with the defendants' version does not change the impact of what was said by Marcello. In either case he was indicating to Marcello that he had influence with officials of Jefferson Parish.

The third instance of an alleged intentional misrepresentation is also found in paragraph 23. Marcello and Hauser had been discussing two officials of Jefferson Parish, Messrs. Lee and Allen. The affidavit states,

Hauser and Marcello discussed the fact that both Lee and Allen were their 'kind of people,' and that once the contract is obtained, they would 'pay who we have to pay.' (Hauser stated 'we'll pay who we have to pay' and Marcello verbally agreed).

Defendants contend that Hauser's mention of paying whomever was necessary was made, not in connection with the Jefferson Parish contract, but much sooner in the conversation, in connection with the New Orleans contract. Defendants also contend that the following exchange shows that Marcello did not assent to payoffs, but only skirted the issue:

JH: "And whoever we have to take care of, we'll take care of."

CM: "That's all."

JH: "Okay?"

CM: "Yeah, but I want to see how much money so you'll know exactly what it's all about."

JH: "Okay."

CM: "Cause you know, I don't know if they're giving them a (undecipherable), I don't know what, you see that's not my line of business, but I'll get all the information in writing. Then I can read it out to you."

The words "We'll pay who we have to pay" are neither found on the tape nor on the transcript of the April 2, 1979 conversation. Following a discussion of the possibility of an insurance contract with the City of New Orleans, Hauser states, "And whatever we have to take care of we'll take care of." Marcello replies, "That's all." Following this exchange, Marcello did in fact attempt to contact Messrs. Lee and Allen by telephone.

At the hearing held before Judge Sear, Agent Walker testified that, at the time he reviewed the affidavit before it was presented to the issuing court, at a time he

did not have the tapes in his possession, he was asked by a Strike Force attorney to attribute that comment to the speaker. It was at that point quotation marks were placed around the statement regarding payments. *See* Defendants' Exhibit 24, Transcript of December 11, 1980, morning session at 53–57. This transcript supports the conclusion that the fact that the statement regarding payments was misrepresented as an exact quote was not intentional. Defendants have offered nothing to contradict this conclusion. Nor can it be concluded that it was a reckless misrepresentation. A review of the entire conversation of April 2, 1979 compels the conclusion that the issuing judge was not misled by this statement; the reasonable inferences to be drawn from the conversation of April 2, 1979 are that payments would be made to secure contracts with the City of New Orleans and Jefferson Parish. Thus, the defendants have failed to make the required showing that there was an intentional or reckless misrepresentation in the affidavit sufficient to warrant an evidentiary hearing. .

The fourth instance of an alleged intentional misrepresentation is in paragraph 24 of the affidavit, wherein it is stated, "Marcello told Hauser that he, Marcello, would contact Lee and Allen and get inside information that Hauser would need to submit a bid." Defendants contend that the tape of the April 2, 1979 conversation contains no such statement.

The tape of the conversation does not contain the words "inside information." Consideration of the conversation as a whole leads to the conclusion that Marcello did represent to Hauser that he would obtain what could be fairly characterized as "inside information." This statement does not amount to an intentional or reckless misrepresentation. Moreover, if this statement were stricken from the affidavit, the remainder of the affidavit would provide a sufficient basis for a finding of probable cause.

Finally, defendants complain that the description of a recorded conversation between Hauser and Irving Davidson on April 16, 1979 omits with an intent to deceive any reference to Davidson's comment that Hau-

ser's insurance proposal "had nothing wrong with it, nothing improper ...." Paragraph 33 describes an exchange between Hauser and Davidson concerning contacts with Marcello by telephone in light of Marcello's and Davidson's belief that Marcello's phones were "bugged." Taken in the context of the conversation as a whole, and the conversations of April 8, 1979 between Davidson and Hauser, it is more likely that Davidson was in fact referring to Marcello's desire to communicate with Hauser through Davidson. Marcello apparently believed that Hauser had attempted to call Marcello at a certain phone number against Marcello's express wishes. Marcello had apparently communicated his displeasure to Davidson, and his desire to communicate through Davidson. The tape reflects that Davidson's comment was made, not with reference to insurance proposals, but in an effort to placate Hauser with regard to Marcello's reaction to the belief that Hauser had called that phone number:

> JH: "Well, why does he, does, he doesn't want me to call him anymore?"
>
> ID [Davidson]: "No. He's gonna do it through me. It's better that way. All right? He's on a permanent bug now what does he need the aggravation for? You know, he got told and you know, and all and that's neither here nor there, but there's nothing wrong with it, nothing improper. He'd rather go from me to you. All right?"

A review of this tape, together with the consensual tapes as a whole, leads this court to reject the contention that Davidson was referring to the insurance proposals. Moreover, the comment by Davidson was not material to the conversation, nor does it have any materiality to the determination of the existence of probable cause for the issuance of the wiretap authorization.

Defendants argue that these instances of alleged intentional or reckless misrepresentations and omissions are merely illustrative of many such misrepresentations to be found in the affidavit, and that they are entitled to an evidentiary hearing to prove all such misrepresentations. *Franks* re-

quires more than conclusory allegations of misrepresentations. With regard to each alleged instance of intentional or reckless misrepresentation, the defendants are required to "point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons." *Franks v. Delaware*, 438 U.S. at 171, 98 S.Ct. at 2684. With the exception of the instances discussed above, the defendants have made no attempt to enumerate the alleged misrepresentations. Moreover, this court has carefully studied all the consensual tapes and transcripts and the record of the hearing conducted before Judge Sear during the Brilab proceedings, and is firmly convinced that the affidavit as a whole accurately represented the facts to the issuing judge, and that probable cause existed for the issuance of the wiretap authorizations.

Accordingly, based on the files, records, and proceedings, defendants are not entitled to an evidentiary hearing on their motion to suppress, nor are they entitled to suppression of the evidence obtained as a result of the court ordered interceptions.

## LACK OF CONSENT

The defendants seek to suppress the consensual interceptions on the ground that Joseph Hauser failed to make a knowing and voluntary consent to the interceptions because of his alleged drug use and because of pressure exerted on him by the government to cooperate. Defendants request an evidentiary hearing on this issue.

18 U.S.C. § 2511(2)(c) provides,

It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire or oral communication, where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception.

 There is no general requirement that the court conduct an evidentiary hearing on the issue of consent. *See United States v. Glickman*, 604 F.2d 625, 633 (9th Cir. 1979). The proof necessary to show that voluntary consent to an interception is "considerably less stringent" than that

needed to show consent to a physical search. *Id.* (citations omitted). Ordinarily, the government need only show that the consenting party knew his conversations were being taped. *Id.* at 634. In this instance the tapes themselves show Hauser's knowledge of the taping.

 On the basis of the record before this court, consisting of the tapes themselves and the transcripts of the New Orleans proceedings at which this issue was thoroughly explored, all of which were offered by the defendants in this proceeding, this court finds that Joseph Hauser knowingly and voluntarily consented to the interceptions defendants seek to suppress.

## STALENESS

 Defendants seek to have stricken the background information in the affidavit on the grounds of staleness. They assert that the events described as occurring in 1975 and 1976 are too remote in time to provide a basis for a finding of probable cause. The standard for determining whether a time lapse in events described in an affidavit in support of a search warrant precludes a finding of probable cause is a flexible one. *See Durham v. United States*, 403 F.2d 190, 194, n.6 (9th Cir. 1968). Such a determination depends on the facts of the particular case. *United States v. DiMuro*, 540 F.2d 503, 516 (1st Cir. 1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 733, 50 L.Ed.2d 749 (1977). In this instance, the affidavit demonstrates the long standing relationship between Hauser, Davidson and Marcello, and their long standing involvement in activities of this kind. The consensual recordings corroborate the background information provided by Hauser. Under these circumstances, we reject defendants' contention that the background information must be stricken because of staleness.

## MISCELLANEOUS GROUNDS FOR SUPPRESSION

We find no merit in defendants' contentions that the government failed to make a proper showing of necessity for the interceptions, that it failed to minimize the in-

terceptions, that 18 U.S.C. § 2510 *et seq.* is unconstitutional, that the affidavit did not contain a full statement regarding prior interceptions, and that the intercept orders were directed toward obtaining evidence of future times.

Accordingly, defendants are not entitled to suppression of any of the consensual interceptions nor of the fruits of any of the court-ordered interceptions on any of the grounds urged herein.